**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas Hartwell LILES, Michael Harold Jones, John Richard Salane,
Defendants-Appellants.**

No. 81–5391.

United States Court of Appeals,
Eleventh Circuit.

March 15, 1982.

Certiorari Denied June 1, 1982.

See 102 S.Ct. 2300.

Norman Francis Haft, Miami, Fla., for defendants-appellants.

Sonia Escobio-O'Donnell, Jon May, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE, KRAVITCH and CLARK, Circuit Judges.

VANCE, Circuit Judge:

Thomas Hartwell Liles, Michael Harold Jones, and John Richard Salane appeal their convictions after trial by jury of one count of possession of marijuana on an American vessel with intent to distribute in violation of 21 U.S.C. § 955a and 18 U.S.C. § 2.[1] We affirm.

On December 10, 1980 the Coast Guard cutter DECISIVE, on patrol on the high seas approximately thirty miles southeast of Cuba, stopped and boarded a forty-four foot American sailing vessel, the LITTLE BROOKE, to check for compliance with United States laws. Appellants were the only people aboard the vessel.

As the boarding party approached the LITTLE BROOKE, they were able to smell marijuana. After boarding, they discovered that the main cabin was virtually packed with approximately 4,800 pounds of marijuana. Appellants were arrested and taken to Miami.

At trial, Liles testified that he loaded the ship with marijuana while at port in Jamaica with the help of a Jamaican customs official who agreed to meet him in Nassau to unload the cargo. He further testified that he was the owner of the vessel and that he purposefully kept Jones and Salane in the dark about the presence of marijuana on the ship. Jones and Salane both testified that they did not realize that the LITTLE BROOKE carried marijuana until the ship was three to five miles out to sea. Salane stated that he told Liles of his intention to depart from the vessel on a dinghy at the first sight of land.

Appellants raise a number of objections to their convictions.[2]

## I.

Appellants contend that venue was improper in the southern district of Florida.

1. Liles was sentenced to five years in prison. Jones and Salane were each sentenced to three years in prison.

2. Four of their objections are squarely foreclosed by precedent binding upon this court. We therefore mention them only in passing. Appellants' objection to the legality of the extraterritorial application of 21 U.S.C. § 955a is untenable in light of our decision today in United States v. Riker, 670 F.2d 987 (11th Cir. 1982). Their three challenges to the authority of the Coast Guard to stop and board the vessel have been foreclosed by United States v. One (1) 43 Foot Sailing Vessel, 405 F.Supp. 879, 882–83 (S.D.Fla.1975) (Coast Guard has authority under 14 U.S.C. § 89(a) to stop and board American vessels on the high seas), aff'd per curiam, 538 F.2d 694 (5th Cir. 1976); United States v. Jonas, 639 F.2d 200, 202–03 (5th Cir. 1981) (boarding of American vessels by the Coast Guard on the high seas need not be predicated upon reasonable suspicion); and United States v. Postal, 589 F.2d 862, 885 & n.37 (5th Cir.), cert. denied, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979) (authority of the Coast Guard is not limited by 19 C.F.R. § 162.3(a)).

They argue that the venue provision of 21 U.S.C. § 955a[3] should be read *in pari materia* with the venue provision of the Immigration and Nationality Act, 8 U.S.C. § 1329.[4] Courts interpreting the latter provision have held that a defendant may be tried only in a district into which he has voluntarily entered. *See, e.g., United States v. Vasilatos*, 209 F.2d 195, 197 (3d Cir. 1954). Since appellants entered the southern district of Florida involuntarily, i.e., under arrest for violating 21 U.S.C. § 955a, they contend that trial could not be held in that district.

The fallacy of this argument is plain. The venue provision of the Immigration and Nationality Act ensures that a defendant will be tried in the district in which he commits the offense. The offense itself consists of voluntarily entering the United States in violation of the immigration laws. Under 21 U.S.C. § 955a, however, voluntary entry into the United States is not an element of the offense. To the contrary, the offense consists of violating the narcotics laws on the high seas which are by definition outside the United States or any district thereof. *United States v. Louisiana*, 394 U.S. 11, 22–23, 89 S.Ct. 773, 780–81, 22 L.Ed.2d 44 (1969). Appellants' reliance upon cases under the Immigration and Nationality Act is therefore misplaced.

If the venue provision of section 955a is to be read *in pari materia* with any other statute, that statute should be 18 U.S.C. § 3238,[5] the venue provision for crimes committed on the high seas. Courts interpreting section 3238 have consistently held that venue is proper in any district into which a defendant is brought after his arrest on the high seas. *E.g., United States v. Erwin*, 602 F.2d 1183, 1185 (5th Cir. 1979), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980); *United States v. Williams*, 589 F.2d 210, 212–13 & n.2 (5th Cir. 1979), *adopted in relevant part*, 617 F.2d 1063 (5th Cir. 1980) (en banc).

Venue was therefore proper in the southern district of Florida irrespective of whether appellants' entry into that district was voluntary.

II.

Appellants contend that the application of 21 U.S.C. § 955a to their case is inconsistent with treaty obligations of the United States. They argue that section 955a should be construed in a manner consistent with those obligations. *See Sociedad Nacional de Marineros de Honduras v. McCulloch*, 201 F.Supp. 82, 89 (D.D.C.1962), *aff'd*, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963); *United States v. White*, 508 F.2d 453, 456 (8th Cir. 1974).

Appellants point to two treaties which, they allege, should restrict the scope of section 955a: the Maritime Boundary Agreement, April 27, 1977, United States-Cuba, 28 U.S.T. 5285, T.I.A.S. No. 8627; and the Single Convention on Narcotic Drugs (Single Convention), *opened for signature* March 30, 1961, 18 U.S.T. 1407, T.I.A.S. No. 6298, 520 U.N.T.S. 204 (enforced with respect to United States June 24, 1967). The Maritime Boundary Agreement between the United States and Cuba pro-

**3.** 21 U.S.C. § 955a(f) provides:
Any person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States, or in the United States District Court for the District of Columbia.

**4.** 8 U.S.C. § 1329 provides in pertinent part: [P]rosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended.

The substantive offenses under the Immigration and Nationality Act include entry by an alien into the United States at a time or place other than that designated by immigration officials. 8 U.S.C. § 1325.

**5.** 18 U.S.C. § 3238 provides in pertinent part:
The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender ... is arrested or first brought ....

vides that the United States renounces the exercise of sovereign rights south of a specified line in the Straits of Florida.[6] Since the seizure of the LITTLE BROOKE occurred south of that line, appellants contend that their crime, if any, occurred within an area that the United States had ceded to Cuban jurisdiction. Additionally, article 36 of the Single Convention provides that serious narcotics offenses should be prosecuted in the nation in whose territory the offense is committed.[7] Appellants argue that this treaty provision requires that they be prosecuted in Cuba, not in the United States.

We conclude that the application of 21 U.S.C. § 955a to this case is not inconsistent with the obligations contained in either treaty. The LITTLE BROOKE is an American flag ship. Under well established principles of international law, the jurisdiction of the United States to prosecute crimes on board ship is concurrent with the jurisdiction of the nation in whose waters the crime occurs. *United States v. Flores,* 289 U.S. 137, 157–59, 53 S.Ct. 580, 585–86, 77 L.Ed. 1086 (1933); *Mali v. Keeper of the Common Jail (Wildenhus's Case),* 120 U.S. 1, 11–12, 7 S.Ct. 385, 387, 30 L.Ed. 565 (1887); *United States v. Reagan,* 453 F.2d 165, 169–71 & n.2 (6th Cir. 1971), *cert. denied,* 406 U.S. 946, 92 S.Ct. 2049, 32 L.Ed.2d 334 (1972). Even assuming, therefore, that Cuba had jurisdiction over the crime committed aboard the LITTLE BROOKE, the United States had concurrent jurisdiction. No provision of either treaty expressly or by implication prohibits the operation of the law of the flag principle to confer jurisdiction upon the United States in this case.[8]

### III.

◼ Appellants challenge the sufficiency of the evidence against them. There can be no question that the evidence was sufficient to convict Liles, the owner of the vessel who admitted at trial that he loaded the marijuana onto the LITTLE BROOKE. *See United States v. MacPherson,* 664 F.2d 69, 73 (5th Cir. 1981). Nor do we believe that there is any serious question as to the sufficiency of the evidence to convict the two remaining appellants. Jones and Salane were two members of a three member crew aboard a small sailing craft so laden with marijuana that the Coast Guard boarding crew could smell the substance before coming aboard. The jury was certainly entitled to disbelieve their unlikely story that they were unaware of the marijuana until they were several miles from shore. *See United States v. Robbins,* 629 F.2d 1105, 1106 (5th Cir. 1980). The evidence was more than sufficient to sustain their convictions. *See United States v. Mazyak,* 650 F.2d 788, 791 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1281, 71 L.Ed.2d 464 (1982); *United States v. Alfrey,* 620 F.2d 551,

---

**6.** The Maritime Boundary Agreement, after identifying the coordinates of a line in the Straits of Florida, states:

> It shall be understood by the two Governments that on the north side of the line Cuba would not, and on the south side of the line the United States would not, for any purpose, claim or exercise sovereign rights or jurisdiction over the waters or seabed and subsoil.
>
> Except for the understanding in the preceding paragraph each side reserves its position with respect to the law of the sea.

**7.** Article 36(2)(a)(iv) of the Single Convention provides:

> Serious offenses heretofore referred to committed either by nationals or by foreigners shall be prosecuted by the Party in whose territory the offence was committed . . . .

**8.** Given our resolution of the issue, we need not decide whether the Single Convention is self-executing, *cf. United States v. Postal,* 589 F.2d 862, 884 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 40 (1979) (article 6 of the Convention on the High Seas is not self-executing), or whether the Maritime Boundary Agreement confers upon Cuba any sovereign rights with respect to the waters thirty miles from her shore, *cf. Plaisance v. United States,* 433 F.Supp. 936, 938–39 (E.D.La.1977) (United States does not recognize national boundaries to extend in excess of three miles off shore). We also need not decide whether any rational construction of the term "territory" as it is used in article 36 of the Single Convention would support appellants' contention that the crime was committed in Cuban territory.

555–56 (5th Cir.), *cert. denied,* 449 U.S. 938, 101 S.Ct. 337, 66 L.Ed.2d 160 (1980).[9]

AFFIRMED.

---

**9.** Appellants' final argument is utterly without merit. They contend that the district court improperly aided the prosecution, thus prejudicing appellants' right to an impartial judge. In point of fact, the district court was merely ensuring that the proper predicate was laid before further testimony by a prosecution witness. Such neutral action is permissible. *See United States v. Bartlett,* 633 F.2d 1184, 1188 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 101, 70 L.Ed.2d 91 (1981).